**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MURIEL MCKOY,<br>     Plaintiff<br>     v.<br>HONORABLE RICHARD V. SPENCER,[1]<br>     Defendant | Civil Action No. 16-1313 (CKK) |

**MEMORANDUM OPINION**
(September 21, 2017)

This suit arises from Plaintiff Muriel McKoy's discharge from her employment as a dentist with the Navy. Plaintiff claims that the Navy violated her constitutional rights to free speech and due process under the First and Fifth Amendments to the United States Constitution, as well as the Privacy Act. Before the Court is Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment. Defendant argues that Plaintiff's complaint must be dismissed for lack of jurisdiction or for failure to state a claim. In the alternative, Defendant moves for summary judgment. Defendant also asks the Court to transfer this case to the United States Court of Federal Claims.

Upon consideration of the pleadings,[2] the relevant legal authorities, and the applicable record, the Court GRANTS-IN-PART and DENIES-IN-PART Defendant's Motion. As

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Honorable Richard V. Spencer is substituted in his official capacity as Secretary of the Navy.

[2] The Court's consideration has focused on the following documents:
- Def.'s Corrected Mot. to Dismiss or, in the Alternative, for Summary Judgment ("Def.'s Mot."), ECF No. 9-1;
- Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss or, in the Alternative, for Summary Judgment ("Pl.'s Opp'n"), ECF No. 12; and
- Def.'s Reply in Support of Mot. to Dismiss or, in the Alternative, for Summary Judgment ("Def.'s Reply"), ECF No. 14.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

explained in greater detail below, the Court rejects most of Defendant's arguments for dismissal on the pleadings. The Court finds that sovereign immunity has been waived under the Administrative Procedure Act ("APA") for most of Plaintiff's lawsuit, but will dismiss Plaintiff's claim for money damages pursuant to the First and Fifth Amendments. The Court further finds that transfer is inappropriate, that the Court has jurisdiction over Plaintiff's First Amendment claim, and that Plaintiff's due process and Privacy Act claims are adequately pled. Moreover, the Court will not grant summary judgment for Defendant at this time because it is not convinced that the record before it is complete.

## I. BACKGROUND

Plaintiff Muriel McKoy is an African American female who was previously employed by the Navy as a dentist. Compl. ¶¶ 4, 7. In 2013, Plaintiff's superior, Captain Sangsoo J. Grzesik, initiated a review of Plaintiff's work. *Id.* ¶ 12. Based on the results of a subsequent evaluation supervised by Captain Grzesik, Plaintiff's clinical dentistry privileges were held in abeyance and then suspended. *Id.* ¶¶ 14-15. Further proceedings and appeals led to Plaintiff being prohibited from practicing dentistry in the Navy. *Id.* ¶ 17. She was eventually separated and discharged. *Id.* ¶ 25. Plaintiff argues that these actions were taken not because of her alleged incompetence, but instead because she had previously complained about her supervisor, Captain Grzesik. *Id.* ¶ 14. Specifically, Plaintiff alleges that she had previously complained that Captain Grzesik told another individual that Plaintiff "did not trust white men." *Id.* ¶ 10.

As a result of these proceedings, Plaintiff's official Navy record was updated to indicate that she had performed substandard dentistry, and the Navy reported its adverse actions against her to the National Practitioner Data Bank and New York licensing authorities. *Id.* ¶¶ 18-19, 39. The Navy also reported that Plaintiff had received a less than honorable discharge to the

university at which she enrolled after her separation. *Id.* ¶ 26. Finally, the Navy reported that Plaintiff was indebted to the Navy to the Defense Finance Accounting Agency, which in turn reported that information to national credit reporting agencies. *Id.* ¶ 27.

Plaintiff filed this lawsuit on June 24, 2016. Plaintiff alleges that the manner in which the Navy suspended and then discharged her violated her rights under the First and Fifth Amendments to the United States Constitution, as well as the Privacy Act. Plaintiff seeks an injunction, declaratory judgment, reinstatement with removal of adverse personnel actions, rescission of Defendant's statements to the National Practitioner Data Bank and New York licensing authorities, cessation of Defendant's efforts to recoup the incentive pay and bonus pay Plaintiff had received while employed by the Navy, a reporting to national credit agencies that Plaintiff is not in fact indebted to the Navy, as well as damages, fees, costs and expenses.

In lieu of filing an answer to Plaintiff's complaint, Defendant has filed a motion to dismiss or, in the alternative, for summary judgment. To support his "alternative" motion for summary judgment, Defendant has attached to his motion hundreds of pages of "Administrative Record Excerpts."

## II. LEGAL STANDARDS

### A. Subject Matter Jurisdiction under Rule 12(b)(1)

A court must dismiss a case pursuant to Federal Rule 12(b)(1) when it lacks subject matter jurisdiction. In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted); *see also Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)

("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."). "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted).

## B. Failure to State a Claim under Rule 12(b)(6)

Pursuant to Federal Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "In evaluating a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor

of plaintiff." *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 27 (D.D.C. 2006).

## C. Summary Judgment under Rule 56

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of *some* factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in its favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

## III. DISCUSSION

Defendant's motion contains two types of arguments: (A) those that can be resolved at the pleading stage of this case, and (B) those that cannot. As explained below, most of the arguments in the first category—those appropriately raised pursuant to Federal Rule 12—are unpersuasive and will be rejected. The arguments in the latter category—those raised as part of Defendant's "alternative" motion for summary judgment—are premature and will have to wait to be resolved at a later date when the Court is confident that the record before it is complete.

### A. Defendant's Rule 12 Motion to Dismiss and Transfer Request

The Court first resolves those arguments in Defendant's motion that have properly been raised under Rule 12 and can be resolved at the threshold of this case. The Court finds that sovereign immunity has been waived for Plaintiff's constitutional claims except to the extent they request money damages, that the Court has jurisdiction over Plaintiff's First Amendment claim, that this case cannot be transferred to the Court of Federal Claims, and that Plaintiffs' Fifth Amendment due process and Privacy Act claims are adequately pled.

#### 1. Sovereign Immunity

The Court must first take up Defendant's argument that "Plaintiff's First and Fifth Amendment claims should be dismissed because she has failed to plead a waiver of sovereign immunity regarding these claims." Def.'s Mot. at 1.[3] "Absent a waiver, sovereign immunity

---

[3] Defendant limits his sovereign immunity argument to Plaintiff's constitutional claims. These arguments are irrelevant to Plaintiff's claim under the Privacy Act, which itself contains a waiver of sovereign immunity. *See Martinez v. Bureau of Prisons*, 444 F.3d 620, 622 (D.C. Cir. 2006) (noting that the Privacy Act "independently confer[s] jurisdiction upon the district court and waive[s] sovereign immunity for money claims against the United States").

shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475

(1994). Because "[s]overeign immunity is jurisdictional in nature," before addressing the merits

of Plaintiff's claims, the Court "must first decide whether [Defendant's] immunity has been

waived." *Id.* "Where a plaintiff has brought suit against the federal government (or a

government official sued as such), a federal court is without jurisdiction to consider the

complaint in the absence of an express waiver of sovereign immunity." *Z St., Inc. v. Koskinen*,

44 F. Supp. 3d 48, 63 (D.D.C. 2014), *aff'd sub nom. Z St. v. Koskinen*, 791 F.3d 24 (D.C. Cir.

2015).[4]

Plaintiff argues that the APA provides the necessary waiver of sovereign immunity in this

case, and the Court agrees. The APA states that:

> An action in a court of the United States seeking relief other than money damages
> and stating a claim that an agency or an officer or employee thereof acted or failed
> to act in an official capacity or under color of legal authority shall not be dismissed
> nor relief therein be denied on the ground that it is against the United States or that
> the United States is an indispensable party.

5 U.S.C. § 702(a).

Plaintiff's constitutional claims, for the most part, fall within this waiver. Plaintiff seeks

declaratory and injunctive relief on the grounds that the Secretary of the Navy, acting in his

official capacity, violated two constitutional provisions. The fact that Plaintiff's claims are not

themselves brought pursuant to the APA's cause of action is not an impediment to the

application of the APA's sovereign immunity waiver. It is well-established that one need not

assert an APA claim to make use of the APA's waiver of sovereign immunity. *See Perry Capital*

*LLC v. Mnuchin*, 864 F.3d 591, 620 (D.C. Cir. 2017) ("We have 'repeatedly' and 'expressly'

---

[4] Plaintiff's complaint is nominally brought against the Secretary of the Navy in his official
capacity, Compl. ¶ 5, but "[t]he sovereign immunity doctrine applies equally to the government
itself and to a federal official sued in his official capacity," *Z St.*, 44 F. Supp. 3d at 63.

held in the broadest terms that 'the APA's waiver of sovereign immunity applies to any suit whether under the APA or not.'") (quoting *Trudeau v. FTC*, 456 F.3d 178, 186 (D.C. Cir. 2006)); *Kaufman v. Mukasey*, 524 F.3d 1334, 1337 n.5 (D.C. Cir. 2008) ("The APA waives sovereign immunity for claims against government agencies and officials even when not brought pursuant to the APA") (internal citations omitted); *Trudeau*, 456 F.3d at 186 (stating that the D.C. Circuit has repeatedly rejected the argument that the APA's waiver of sovereign immunity is limited to APA suits, noting that "[t]here is nothing in the language of the second sentence of § 702 that restricts its waiver to suits brought under the APA.").

The Court is not persuaded by Defendant's argument that it should ignore this applicable waiver of sovereign immunity simply because Plaintiff failed to allege it in her complaint. The waiver of sovereign immunity is a legal matter relating to the Court's jurisdiction. It is sufficient that Plaintiff correctly argued that the APA provides the requisite waiver of immunity in her opposition to Defendant's motion to dismiss. *See Z St.*, 44 F. Supp. 3d at 63 n.8 (rejecting argument that plaintiff failed to establish a waiver of sovereign immunity because it did not cite a sovereign immunity-waiving statute in its complaint because plaintiff had "identifie[d] the APA as the basis for its contention that sovereign immunity has been expressly waived" in its opposition to the defendant's motion to dismiss); *Olivas v. Whitford*, No. 14CV1434-WQH-BLM, 2015 WL 867350, at *7 (S.D. Cal. Mar. 2, 2015) ("the Court finds no authority for Defendant's contention that this case must be dismissed on grounds that Plaintiff has not cited 5 U.S.C. section 702 in his Complaint.").

However, the Court cannot allow Plaintiff's constitutional claims to go forward in their entirety. The APA's waiver of sovereign immunity only applies to Plaintiff's First and Fifth Amendment claims to the extent Plaintiff seeks relief "other than money damages." 5 U.S.C. §

702(a).  Most of the relief Plaintiff seeks is injunctive or declaratory in nature and raises no problem in this regard.  *See Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988) ("insofar as the complaints sought declaratory and injunctive relief, they were certainly not actions for money damages").

On the other hand, the "damages" Plaintiff requests—back pay, front pay, lost benefits and compensatory damages for emotional distress and hardship—do constitute "money damages" and accordingly fall outside the APA's waiver of sovereign immunity.  To be sure, Plaintiff is correct that the fact that these remedies are monetary in nature does not, by itself, make them "money damages."  Not all monetary relief constitutes "money damages."  "Money damages" refers only to compensatory monetary relief that is "given to the plaintiff to *substitute* for a suffered loss."  *Maryland Dep't of Human Res. v. Dep't of Health & Human Servs.*, 763 F.2d 1441, 1446 (D.C. Cir. 1985) (emphasis in original).  Monetary relief does not constitute "money damages" if, instead of attempting to *substitute* for a suffered loss, it "'attempt[s] to give the plaintiff the very thing to which he was entitled.'"  *Id.* (quoting D. Dobbs, *Handbook on the Law of Remedies* 135 (1973)); *Robles v. Kerry*, 74 F. Supp. 3d 254, 260 (D.D.C. 2014) ("'money damages' are categorically exclusive of *specific relief* —which includes monetary relief sought as a statutory entitlement.") (emphasis in original).

Latching on to this distinction, Plaintiff argues that the Court has jurisdiction over her requests for monetary relief in this case because they constitute "specific relief" tied to her request for reinstatement.  Plaintiff is incorrect.  None of the damages she requests—back pay, front pay, lost benefits or compensatory damages for emotional distress and hardship—are based on any specific legal entitlement to particular monies.  Instead, if granted, the damages Plaintiff is requesting would be *substitutes* for Plaintiff's alleged losses—*e.g.,* her discharge and

emotional distress.  All of the monetary relief Plaintiff seeks accordingly constitutes money damages.  *See Hubbard v. Adm'r, EPA*, 982 F.2d 531, 539 (D.C. Cir. 1992) (holding that "[w]e can find no basis . . . on which to conclude that Congress meant to include back pay in its waiver of immunity as to specific relief 'other than money damages.'"); *Ward v. Brown*, 22 F.3d 516, 520 (2d Cir. 1994) ("Back pay, as a claim for money damages, falls outside the scope of the APA."); *Haines v. Fed. Motor Carrier Safety Admin.*, No. 15-1624, 2016 WL 659180, at *5 (6th Cir. Feb. 18, 2016) (holding that damages for "emotional distress" are money damages not covered by the APA's waiver of sovereign immunity); *King v. U.S. Dep't of Veterans Affairs*, 728 F.3d 410, 416 (5th Cir. 2013) (holding that the APA did not waive sovereign immunity for a complaint for damages based on lost benefits because it was a claim for "money damages"); *Sobczak v. Winter*, No. 08 C 5550, 2008 WL 5272175, at *3 (N.D. Ill. Dec. 16, 2008) (in case alleging wrongful termination by the military, holding that request for front pay was a substitute monetary remedy unavailable under the APA); *Taydus v. Cisneros*, 902 F. Supp. 278, 284 (D. Mass. 1995) ("under the APA, plaintiff is not entitled to front pay, back pay, [or] emotional distress damages").[5]  Because these remedies constitute money damages, the Court cannot entertain Plaintiffs' request for them under the APA's waiver of sovereign immunity.

---

[5] Plaintiff cites *Bowen v. Massachusetts* for the proposition that back pay is a form of specific relief that does not constitute money damages.  Pl.'s Opp'n at 17 (quoting *Bowen*, 487 U.S. at 893).  In *Hubbard v. Adm'r, Envtl. Prot. Agency*, 982 F.2d 531, 536-37 (D.C. Cir. 1992), the D.C. Circuit expressly rejected the argument that *Bowen* stands for that proposition.  The D.C. Circuit stated that "it is ambiguous whether the [portion of *Bowen* addressing this issue and cited by Plaintiff here] was labelling back pay itself as specific relief, or merely making the unremarkable point that back pay often accompanies an award of reinstatement, which itself is unquestionably a form of specific relief."  *Id.* at 536.  This Court is, of course, bound by the D.C. Circuit's holding in *Hubbard*.

In sum, the APA provides a waiver of sovereign immunity for Plaintiff's First and Fifth Amendment claims, but that waiver does not apply to Plaintiff's request for money damages. To the extent Plaintiff requests money damages under those claims, those requests are dismissed.

**2. Defendant's Request to Transfer to the Claims Court**

Plaintiff's request for money damages does not, however, mean that this case should be transferred to the United States Court of Federal Claims. In order for transfer to be appropriate, the Court of Federal Claims must have jurisdiction over the action. *See U.S. Marine, Inc. v. United States*, 722 F.3d 1360, 1365 (Fed. Cir. 2013). As particularly relevant here, the Court of Federal Claims lacks jurisdiction over actions brought pursuant to statutes or constitutional provisions that are not "money-mandating." *Greenlee Cty., Ariz. v. United States*, 487 F.3d 871, 875-76 (Fed. Cir. 2007).

In this case, Plaintiff asserts only three claims: two constitutional causes of action for deprivation of her due process and free speech rights, and one statutory cause of action under the Privacy Act. The Claims Court does not have jurisdiction over any of these claims standing alone, because they are not money-mandating. *See Frazier v. United States*, 683 F. App'x 938, 940 (Fed. Cir. 2017) ("The COFC does not have jurisdiction over claimed violations of the Privacy Act . . . because [the] statute[ ] do[es] not contain money-mandating provisions"); *Martinez*, 444 F.3d at 622-23 (holding that the Tucker Act was inapplicable to Privacy Act and Due Process Clause claims); *United States v. Connolly*, 716 F.2d 882, 887 (Fed. Cir. 1983) ("We agree with the Court of Claims that the first amendment, standing alone, cannot be so interpreted to command the payment of money."); *Volk v. United States*, 111 Fed. Cl. 313, 326 (2013) (holding that the Claims Court does not have jurisdiction over claims brought under the First Amendment or the Fifth Amendment Due Process Clause because they are not money-mandating). Transfer is therefore inappropriate.

### 3. Plaintiff's First Amendment Claim and the Military Whistleblower Protection Act

Next, Defendant argues that the Court should dismiss Plaintiff's First Amendment claim because it "should be read as a claim under the Military Whistleblower Protection Act," ("MWPA") and accordingly "dismissed because Courts do not have jurisdiction over MWPA claims." Def.'s Mot. at 7. This argument lacks merit.

Defendant cites a number of cases that establish that the MWPA does not provide a private cause of action that can be entertained by courts. *See, e.g.*, *Penland v. Mabus*, 78 F. Supp. 3d 484, 495 (D.D.C. 2015) ("These allegations might make out a violation of MWPA, but any such violation cannot be rectified by this Court because the MWPA does not provide a private cause of action."); *Klingenschmitt v. United States*, 119 Fed. Cl. 163, 185 (2014), *aff'd*, 623 F. App'x 1013 (Fed. Cir. 2015) ("The existence of [a] comprehensive [administrative] scheme establishes that Congress did not intend to provide plaintiffs with a private cause of action to enforce their rights under the MWPA in court."); *Soeken v. United States*, 47 Fed. Cl. 430, 433 (2000), *aff'd*, 20 F. App'x 900 (Fed. Cir. 2001) ("Because the Military Whistleblower Protection Act provides strictly administrative remedies, plaintiff does not have a private cause of action on which to file a claim in this court.").

Had Plaintiff asserted a cause of action under the MWPA, this case law might have been of great help to Defendant. Plaintiff has not, however, asserted such a claim. Instead, Plaintiff has alleged a First Amendment retaliation claim.[6] Defendant does not suggest that the MWPA

---

[6] Defendant briefly argues that Plaintiff "has no First Amendment claim because her speech was never suppressed." Def.'s Reply at 2. "Rather," Defendant argues, "she is claiming that she was retaliated against for a report she made." *Id.* However, as Defendant does not contest, a cause of action exists for retaliation in violation of the First Amendment. *See, e.g.*, *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016) (discussing elements of a First Amendment retaliation claim). The Court interprets Plaintiff's pleadings as asserting such a claim.

explicitly forbids such constitutional claims. *See Hubbard v. U.S. E.P.A. Adm'r*, 809 F.2d 1, 11 n.15 (D.C. Cir. 1986) (holding that administrative regime did "not preclude federal employees from seeking equitable relief against agencies for allegedly unconstitutional personnel actions" because it did not "explicitly limit [the court's] jurisdiction to" do so). Considering that "the longstanding law of this Circuit . . . favors permitting plaintiffs the opportunity to bring constitutional claims for injunctive relief in the district court," *Davis v. Billington*, 51 F. Supp. 3d 97, 109 (D.D.C. 2014), the Court finds that it would be inappropriate to dismiss Plaintiff's constitutional claim on the basis that *if* she had pled a MWPA claim instead, that claim would have been subject to dismissal.[7]

Finally, Defendant also suggests that Plaintiff's First Amendment claim is "nonjusticiable" because it asks this Court to review the merits of a military personnel decision. Def.'s Mot. at 11. The D.C. Circuit has held that "[t]he Constitution vests '[t]he complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force' exclusively in the legislative and executive branches." *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989) (quoting *Gilligan v. Morgan,* 413 U.S. 1, 10 (1973)). Accordingly, "[d]ecisions within this Circuit routinely have found military personnel actions— including promotions, discharges, and discipline—to be nonjusticiable." *Wilson v. James*, 139 F. Supp. 3d 410, 431 (D.D.C. 2015), *aff'd*, No. 15-5338, 2016 WL 3043746 (D.C. Cir. May 17, 2016), *cert. denied*, 137 S. Ct. 695 (2017).

_____

[7] In a footnote in this section of his brief, Defendant states that "Plaintiff claims that Equal Employment Opportunity (EEO) regulations apply to her" and argues that this is incorrect. Def.'s Mot. at 7 n.2. However, a more careful reading of the paragraph of Plaintiff's complaint Defendant cites reveals that Plaintiff actually stated that "[a]s an officer in the Navy, Dr. McKoy is *not* entitled the EEO rights provided to federal employees." Compl. ¶ 35 (emphasis added). The Court sees no reason to dismiss "Plaintiff's claim[ ] regarding Equal Employment Opportunity," as no such claim has been made. Def.'s Reply at 12-13.

The Court is not convinced that Plaintiff's constitutional claim is "nonjusticiable" under this line of authority. While judicial deference to military personnel actions is undoubtedly appropriate in many circumstances, it is not unlimited. The D.C. Circuit has explained that although "the operation of the military is vested in Congress and the Executive, and . . . it is not for the courts to establish the composition of the armed forces . . . constitutional questions that arise out of military decisions regarding the composition of the armed forces are not committed to the other coordinate branches of government." *Emory v. Sec'y of Navy*, 819 F.2d 291, 294 (D.C. Cir. 1987). "Where it is alleged, as it is here, that the armed forces have trenched upon constitutionally guaranteed rights through the promotion and selection process, the courts are not powerless to act." *Id.* "The military has not been exempted from constitutional provisions that protect the rights of individuals" and, indeed, "[i]t is precisely the role of the courts to determine whether those rights have been violated." *Id.*; *see also Chappell v. Wallace*, 462 U.S. 296, 304 (1983) ("This Court has never held, nor do we now hold, that military personnel are barred from all redress in civilian courts for constitutional wrongs suffered in the course of military service."); *Heap v. Carter*, 112 F. Supp. 3d 402, 413 (E.D. Va. 2015) (holding that First Amendment claim arising out of rejection of applicant to be a Navy chaplain was justiciable because the court did not "lack[ ] jurisdiction to decide constitutional questions that arise out of military decisions about establishing the armed forces."). The Court has an obligation to, and is capable of, entertaining Plaintiff's First Amendment claim.

To be clear, the Court passes no judgment at this time about whether Plaintiff's First Amendment claim will be successful on the merits. The elements of such a claim may be considerably more difficult to satisfy than those of other claims Plaintiff might have chosen to

assert. The Court simply concludes that it has jurisdiction to hear Plaintiff's constitutional claim, and will not dismiss it at the pleading stage.

### 4. Plaintiff's Fifth Amendment Due Process Claim

Having determined the jurisdictional and venue issues discussed above, the Court now moves on to the Defendant's assertions that certain of Plaintiff's claims should be dismissed, at least in part, for failure to state a claim. Defendant moves to dismiss Plaintiff's Fifth Amendment due process claim to the extent it is based on the Navy's alleged recoupment of "incentive pay." Defendant argues that this claim should be dismissed for failure to state a claim because Plaintiff does not have a constitutionally-protected interest in the continued receipt of "incentive pay." Def.'s Mot. at 18. As support, Defendant cites *Smith v. Harvey*, 541 F. Supp. 2d 8, 15 (D.D.C. 2008) for the proposition that "there is no constitutionally-protected property interest in continued military service or the employment benefits that come with military service."

This proposition is valid, *see Spelman v. McHugh*, 65 F. Supp. 3d 40, 50 (D.D.C. 2014) (collecting cases where courts in this Circuit have found that there is no protected property interest in continued military service), but the Court is not persuaded that it requires dismissal of Plaintiff's claim at this time. As best the Court can tell, Plaintiff is not asserting an interest in the *continued* receipt of incentive pay as a benefit of *continued* military service, but instead is complaining that the Navy took incentive pay back from her that she had *already received*. Compl. ¶ 30 ("Dr. McKoy's due process rights were violated when the Navy recouped Incentive Pay . . ."). Constitutionally-protected interests can arise in benefits that have already been acquired. *See Powell v. Marsh*, 560 F. Supp. 636, 641 n.6 (D.D.C. 1983) ("The Supreme Court has explained that property interests arise in specific benefits that a person *has already*

*acquired.*") (emphasis in original) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 575 (1972)); *Rudo v. McHugh*, 931 F. Supp. 2d 132, 142-43 (D.D.C. 2013) (same). The Court will accordingly not dismiss Plaintiff's due process claim for this reason at this time.

**5. Plaintiff's Privacy Act Claim**

Finally, the Court addresses Defendant's arguments that Plaintiff's Privacy Act claim should be dismissed. First, Defendant moves to dismiss this claim to the extent it is based on the allegation that Defendant reported that Plaintiff received a "less than honorable discharge" and that she was indebted to the Navy for bonus pay she had previously received. Defendant argues that "Plaintiff fails to identify to whom or to what agency she believes the Navy reported these facts." Def.'s Mot. at 24.

This argument is simply wrong. Plaintiff has identified the alleged recipient of these reports. Plaintiff's complaint states that "the Navy reported to the school [at which Plaintiff had enrolled in Fall 2015] that she received a less than honorable discharge" and that "the Navy reported to the Defense Finance Accounting Agency that Dr. McKoy was indebted to the Navy for the bonus pay she received each year she was in service." Compl. ¶¶ 26, 27. Defendant also argues that Plaintiff has "fail[ed] to provide any evidence" that the Navy reported this information, Def.'s Mot. at 24, but the Court will not grant Defendant's motion to dismiss for failure to state a claim on the grounds that Plaintiff has not provided "evidence."

Second, Defendant argues that the Court should dismiss Plaintiff's Privacy Act claim because Defendant's alleged reporting of the revocation of Plaintiff's clinical privileges to the National Practitioner Data Bank and the New York licensing authorities falls under the "routine use" exception of the Privacy Act. *Id.* at 22-24. Although it generally forbids the willful or intentional improper disclosure of records, "[t]he Privacy Act contains some exceptions." *Ames*

*v. United States Dep't of Homeland Sec.*, 861 F.3d 238, 240 (D.C. Cir. 2017). "As relevant here, the Act allows an agency to make disclosures that constitute a 'routine use' of the record." *Id.* "To fit within the confines of the routine use exception to the Privacy Act, an agency's disclosure of a record must be both (i) 'for a purpose which is compatible with the purpose for which it was collected' and (ii) within the scope of a routine use notice published by the agency." *Id.* (citing 5 U.S.C. § 552a(a)(7), 552a(e)(4)(D)).

Defendant's argument about this exception is premature. Plaintiff's claim is adequately pled and discovery is available under the Privacy Act. Defendant has raised a possible exception to liability, but Plaintiff has reasonably requested the opportunity to obtain discovery supporting her claim before responding to Defendant's argument. There are clearly factual disputes at issue with respect to Defendant's arguments, including whether Plaintiff received sufficient actual notice of the disclosure. The Court accordingly finds that any determination of the applicability of the routine use exception would be more appropriate after discovery takes place. *See McCready v. Nicholson*, 465 F.3d 1, 19 (D.C. Cir. 2006) (in Privacy Act case, holding that plaintiff should be afforded a reasonable opportunity to complete discovery before responding to the government's summary judgment motion); *York v. McHugh*, 698 F. Supp. 2d 101, 108-09 (D.D.C. 2010) (holding that "[a] party suing under the Privacy Act is entitled to the same discovery permitted under the Federal Rules of Civil Procedure as for any other cause of action," and that plaintiff was "entitled to obtain discovery to support her claim"); *Runkle v. Gonzales*, 391 F. Supp. 2d 210, 240 (D.D.C. 2005) ("whether the routine use exception the defendants raise here or whether any other Privacy Act exception applies should be decided after the parties have

had an opportunity to complete discovery.").[8]  The Court will not dismiss Plaintiff's Privacy Act claim at this point.

In sum, the Court will dismiss Plaintiff's First and Fifth Amendment claims to the extent she seeks money damages because Defendant has not waived his sovereign immunity for those claims, but will otherwise deny Defendant's Rule 12 Motion to Dismiss and will not transfer this case.

## B.  Defendant's Motion for Summary Judgment

The remainder of Defendant's arguments presumably relate to his alternative motion for summary judgment.  Defendant moves for summary judgment on Plaintiff's Fifth Amendment due process claim on the grounds that Plaintiff received all the due process to which she was entitled, Def.'s Mot. at 13-19, and on Plaintiff's First Amendment claim because her freedom of speech was not curtailed, *id.* at 19-20.  Plaintiff opposes summary judgment, arguing that she is entitled to discovery and that Defendant has not provided the Court or the Plaintiff with the complete administrative record.  The Court will not grant summary judgment at this time because it is not satisfied that it has a complete record before it.

First, Plaintiff has attached to her opposition to Defendant's motion a declaration pursuant to Federal Rule of Civil Procedure 56(d), explaining that she needs discovery in order to be able to respond to Defendant's summary judgment motion.  *See* Decl. Pursuant to Rule 56(d), ECF No. 12-1.  Defendant has brushed off the notion that any discovery is available in this

---

[8] Defendant also briefly argues that Plaintiff's "tort claim" should be dismissed as unripe because Plaintiff has not filed a claim pursuant to the Federal Tort Claims Act ("FTCA").  Def.'s Mot. at 25.  The Court need not dismiss this claim, because it does not exist.  Although Defendant makes statements such as "Plaintiff presents tort claims to the Court, pursuant to the FTCA," Def.'s Reply at 18, Plaintiff has not asserted a tort claim under the FTCA, a point which she reaffirmed in her opposition to Defendant's motion, Pl.'s Opp'n at 18.  Plaintiff's request for money damages has already been dismissed, as discussed above.

case, stating that "Plaintiff is not entitled to discovery" because "discovery is not permitted in APA cases." Def.'s Reply at 18-19. The Court is not convinced that this issue is so easily resolved. It is true that no or limited discovery is available for APA claims, but there is no APA claim asserted in this case. The Court has relied on the APA's waiver of sovereign immunity, but, as discussed above, the D.C. Circuit has made it clear that the Court may do so even in cases where APA claims are not asserted. *See Perry Capital*, 864 F.3d at 620 ("We have 'repeatedly' and 'expressly' held in the broadest terms that 'the APA's waiver of sovereign immunity applies to any suit whether under the APA or not.'") (quoting *Trudeau*, 456 F.3d at 186). In other cases where the APA's waiver of sovereign immunity has been used for non-APA claims, courts have refused to apply legal requirements applicable to APA claims, such as the requirement of a final agency action, to the non-APA claims. *See Z St.*, 44 F. Supp. 3d at 65 (rejecting argument that "final agency action" requirement for APA claims applied to plaintiff's First Amendment claim simply because APA waiver of sovereign immunity was used, holding that "where a plaintiff has a cause of action that is independent of the APA, it may eschew the statutory requirements that apply only to APA claims and rely nevertheless on the APA's sovereign immunity waiver"); *Mackinac Tribe v. Jewell*, 87 F. Supp. 3d 127, 143 (D.D.C. 2015), *aff'd*, 829 F.3d 754 (D.C. Cir. 2016), *cert. denied*, 137 S. Ct. 638 (2017) ("Plaintiff need not identify a final agency action in order to avail itself of APA's sovereign immunity waiver").

The applicability of the APA's limitations on discovery in particular to non-APA claims appears to be an open question. *See Chiayu Chang v. United States Citizenship & Immigration Servs.*, No. CV 16-1740 (JDB), 2017 WL 2480749, at *1 (D.D.C. May 31, 2017) ("As to plaintiffs' constitutional claims, there appears to be some disagreement among district courts whether the assertion of constitutional claims takes a case outside the procedural strictures of the

APA, including the record review rule."); *compare J.E.F.M. v. Lynch*, No. C14-1026 TSZ, 2015 WL 9839679, at *1 n.1 (W.D. Wash. Aug. 27, 2015) (rejecting "Defendants' assertion that discovery is limited to the administrative record" because "[a]lthough the APA provides the waiver of sovereign immunity necessary for plaintiffs to pursue this case, it is not the statute under which plaintiffs bring suit; rather, plaintiffs invoke 28 U.S.C. § 1331, which confers on the Court jurisdiction over civil actions arising under the Constitution of the United States"), *with Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F. Supp. 3d 1191, 1237 (D.N.M. 2014) (holding that plaintiff's First Amendment retaliation claim "arises under the Constitution, but it is subject to the APA's procedural provisions, which generally limit the judicial review to the administrative record."). The parties in this case have not addressed this issue.

Regardless, even assuming that the APA's discovery limitations apply to this case and the Court's review is limited to the administrative record, the Court is not prepared to grant summary judgment at this time because it is not convinced that the entire record is before the Court. Although Defendant has attached to his motion various "Administrative Record Excerpts," he has not complied with Local Civil Rule 7(n) and Plaintiff claims that he has, thus far, "fail[ed] to provide . . . a complete record." Pl.'s Opp'n at 22. The Court needs to resolve disputes about the completeness of the administrative record before addressing the merits of dispositive motions. By filing an "alternative" summary judgment motion along with his initial Rule 12 motion to dismiss that relies on "excerpts" from the administrative record, Defendant has prevented the Court from being able to do so. If this case is to be decided on the basis of an administrative record, the Court will expect strict compliance with Local Civil Rule 7(n), including the filing of a certified list of the contents of the administrative record. If the parties cannot agree about the

record on which the Court should base its decision in this case, the Court will give Plaintiff an opportunity to contest the completeness of the administrative record.

Perhaps the parties will be able to agree on the record upon which the Court should base its decision, but if not, these issues will need to be resolved. The Court will not entertain summary judgment motions until it is satisfied that the record before it is complete and that Plaintiff has had an opportunity to conduct the discovery to which she is entitled. Accordingly, Defendant's motion for summary judgment will be denied without prejudice.[9]

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS-IN-PART and DENIES-IN-PART Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment. The Court will dismiss Plaintiff's claim for money damages under the First and Fifth Amendments, as no waiver of sovereign immunity applies, but will otherwise deny Defendant's Motion to Dismiss. The Court will deny without prejudice Defendant's alternative Motion for Summary Judgment, pending the completion of discovery and resolution of any discovery-related issues. An appropriate Order accompanies this Memorandum Opinion.

        /s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

---

[9] In a footnote at the conclusion of Defendant's motion, he argues that "Plaintiff's request for legal fees and expenses should be dismissed or, at a minimum, deferred as premature" because Plaintiff has "not alleged that the Government's position was not substantially justified." Def.'s Mot. at 26 n.9. The Court agrees that it is premature to adjudicate Plaintiff's request for fees. Under 28 U.S.C. § 2412(d)(1)(B), "[a] party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses . . . ." "The party shall also allege that the position of the United States was not substantially justified." *Id.* Whether Plaintiff is entitled to fees under this statute and whether she has made all necessary allegations is a question to be decided at a later date if and when she submits a fee application.